IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DIANE L. MILLER,                  : Civil No. 1:24-CV-617
                                  :
        Plaintiff,                :
                                  :
    v.                            :
                                  : (Chief Magistrate Judge Bloom)
LELAND DUDEK, Acting              :
Commissioner of Social Security,[1] :
                                  :
        Defendant.                :

## MEMORANDUM OPINION

## I.  Introduction

Diane Miller filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplementary security income on February 23, 2021. (Tr. 15). Following a hearing before an Administrative Law Judge ("ALJ"), the ALJ found that Miller was not disabled from her alleged onset date of disability of December 5, 2017, through March 9, 2023, the date of the ALJ's decision. (Tr. 35).

---

[1] Leland Dudek became the acting Commissioner of Social Security on February 19, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g), Leland Dudek is substituted as the defendant in this suit.

Miller now appeals this decision, arguing that the ALJ's decision is not supported by substantial evidence. After a review of the record, we conclude that the ALJ's decision is not supported by substantial evidence. Therefore, we will remand this matter for further consideration by the Commissioner.

## II.    <u>Statement of Facts and of the Case</u>

On February 23, 2021, Miller applied for applied for disability insurance benefits and supplemental security income, citing an array of physical and mental impairments, including vertigo, restless leg syndrome, depression, high blood pressure, seasonal allergies, anxiety, asthma, arthritis, and herniated discs. (Tr. 251). Miller was 47 years old at the time of the alleged onset of disability, had a tenth-grade education, and had past employment as a certified nursing aid and a home health aide. (Tr. 252-53).

With respect to the relevant alleged mental impairments[2] the record revealed the following: the earliest relevant records are from

_____

[2] We limit our discussion of the medical records to records involving Miller's mental health impairments because, as we will discuss, we are

Miller's primary care physician, Dr. Janusz Wolanin, from January 14, 2016, at which time Miller was following up on, *inter alia*, her anxiety and depression. (Tr. 375). Including that visit, Miller saw Dr. Wolanin 21 times over four years, and at all but three of those visits Dr. Wolanin noted "adjustment disorder with anxiety and depressed mood" remained present, and either noted no change, noted that Miller was "stable," or noted that these impairments were "controlled with medication." (Tr. 376, 379, 381-82, 385, 388, 390, 393, 396, 399, 403, 406, 410, 413, 424, 428).[3] At an October 19, 2020, follow up for her anxiety, Dr. Wolanin made no changes to Miller's treatment or medications, noting Miller was "[s]table on current medications with no side effects noted." (Tr. 430-31).

Miller had an intake consultation at Northeast Counseling Service ("NCS") on February 11, 2021. (Tr. 449). Miller reported that she lacked motivation, suffered panic attacks, had difficulty concentrating and was

─────────────

remanding this matter due to the ALJ's failure to adequately explain the omission of certain mental limitations in the RFC determination.

[3] The three visits where Dr. Wolanin did not mention anxiety or depression were all visits where Miller was seeking treatment for acute, specific physical issues. (Tr. 415, 417, 420).

3

teary-eyed eight to ten times a day.  (Tr. 443-44).  Miller began weekly counseling with NCS, and at a session in early March, reported that she suffered from depression every day, and no longer took "pleasure in the things in life."  (Tr. 457).  In contrast, on April 2, she reported no depressive symptoms.  (Tr. 468).  After the April 2, 2021, consultation Miller ceased treatment until June of 2021.  (Tr. 656).

State Agency psychological consultant Dr. Melissa Franks reviewed Miller's medical record on May 5, 2021.  (Tr. 75).  Her resulting opinion found, *inter alia*, that Miller had the mental capacity "to manage, understand, and complete simple one or two step tasks."  (Tr. 82-83).

In June of 2021, Miller returned to NCS and resumed semi-regular treatment, consulting with NCS approximately twice a month until November 5, 2021.  (Tr. 656-700).  Her anxiety and depression were relatively steady during this period, though her November 5, 2021, treatment record does note a "minimal decrease" in her anxiety.  (Tr. 697).

Miller had an intake assessment at the Children's Service Center ("CSC") on November 10, 2021.  (Tr. 1820).  She complained of moderate

anxiety and depression symptoms. (*Id.*). On November 11, 2021, Miller had a consultive psychological evaluation with Dr. Jennifer Betts at IMA Professional Services of PA. (Tr. 707). Miller reported trouble sleeping through the night, anxiety symptoms, nightmares, intrusive thoughts, hypervigilance, panic attacks, depression symptoms, crying spells, fatigue, social withdrawal, irritability, and difficulty with concentration and memory. (Tr. 708-10). Dr. Betts noted a dysphoric mood. (Tr. 710). Dr. Betts opined that Miller had mild limitations in her ability to understand, remember, and execute simple instructions, and that Miller had moderate difficulty completing complex instructions. (Tr. 713).

On November 18, 2021, State Agency psychological consultant Dr. Marci Cloutier reviewed Miller's records. (Tr. 110). Dr. Cloutier found that Miller was moderately limited in her ability to carry out detailed instructions but that Miller's impairments "would not preclude 1-2 step functions on a consistent basis." (Tr. 115).

On December 2, 2021, Miller had a psychiatric evaluation at NCS. (Tr. 1496). Dr. Nicole Polashenski evaluated Miller, who was seeking assistance because medication had failed to fully control her symptoms.

(Tr. 1497). Miller explained recent medication changes had led to only small improvements with depression and anxiety, and that she continued to experience difficulty with fatigue, concentration, and motivation. (*Id*.).

On February 7, 2023, Miller had a second evaluation with CSC, who noted she was transferring care from NCS. (Tr. 1849). Dr. Pareshkumar Solgama diagnosed unspecified depressive and anxiety disorders. (Tr. 1854). Dr. Solgama discussed future care plans with Miller and recommended individual psychotherapy. (Tr. 1856).

It is against this factual backdrop that the ALJ conducted a hearing in Miller's case on February 23, 2023. (Tr. 42-67). Miller and a vocational expert both testified at this hearing. (*Id*.). Following this hearing the ALJ issued a decision denying Miller's application for benefits. (Tr. 15-35). In that decision, the ALJ first concluded that since Miller's alleged onset of disability, she had not engaged in any substantial gainful activity. (Tr. 17). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found Miller suffered from the following severe impairments: chronic pain syndrome, hypertension, adjustment disorder with depression and anxiety, obesity, generalized osteoarthritis,

generalized anxiety disorder, major depressive disorder, idiopathic peripheral autonomic neuropathy, and fibromyalgia. (Tr. 18). The ALJ further concluded that while Miller suffered from other impairments, these impairments were non-severe. (*Id.*). At Step 3 the ALJ determined that Miller's impairments did not meet or equal the severity of a listed impairment under the Commissioner's regulations. (*Id.*).

Between Steps 3 and 4 the ALJ concluded that Miller retained the following residual functional capacity to:

> [P]erform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant should never climb ladders, ropes, or scaffolds, but could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. She could have frequent exposure to unprotected heights, moving mechanical parts, dusts, odors, fumes, pulmonary irritants, and extreme cold. She would be limited to performing simple, routine tasks, but not a production rate pace, such as what occurs on an assembly line. She would be limited to simple work-related decisions.

(Tr. 22).

In reaching this RFC determination, the ALJ made the following findings: as to Miller's reported symptoms, the ALJ found that her "medically determinable impairments could reasonably be expected to cause the alleged symptoms [,]" but that her "statements concerning the

intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 23).

The ALJ considered the objective medical evidence, and Miller's activities of daily living, and found that "in consideration of the longitudinal evidence of record, . . . the totality of the medical evidence of record supports [the RFC.]" (Tr. 26). With respect to the mental health opinion evidence, the ALJ found the opinion of Dr. Franks, the state agency initial psychological consultant, to be persuasive. (Tr. 30). He noted it was consistent with and supported by the overall medical evidence and the objective mental status examinations. (*Id.*). The ALJ found that Miller had the capacity to work within Dr. Franks' parameters, which included the conclusion that Miller had the capacity to "manage, understand, and complete simple one or two step tasks." (*Id.*). However, the ALJ's RFC limitation failed to include the one-to-two-step task limitation and instead limited Miller to "simple, routine tasks, but not a production rate pace, . . . [and] simple work-related decisions." (Tr. 22).

The ALJ was only partially persuaded by the opinion of the reconsideration psychological consultant, Dr. Cloutier. (*Id.*). The ALJ largely agreed with Dr. Cloutier's opinion with regards to the limitations opined, as the ALJ found those limitations supported by and consistent with the medical record and the mental status examinations. (*Id.*). Notably, those limitations included that Miller "would be able to perform one to two step functions on a consistent basis." (*Id.*). The ALJ found other parts of Dr. Cloutier's opinion unsupported and inconsistent, specifically the finding that Miller had a moderate limitation with interacting with others, which the ALJ found was not supported by the medical evidence. (*Id.*).

Lastly, the ALJ found the opinion of Dr. Betts to be partially persuasive. (*Id.*). The ALJ was persuaded by all of Dr. Betts findings, save one: the ALJ disagreed with Dr. Betts that the objective medical evidence and examination findings supported a finding that Miller had moderate limitations in interacting with others. (*Id.*).

The ALJ then found at Step 4 that Miller could not perform her past work but, at Step 5, found that she could perform other jobs that existed

in significant numbers in the national economy, such as order clerk, information clerk, and inspector. (Tr. 33). Having reached these conclusions, the ALJ determined that Miller had not met the demanding showing necessary to sustain this claim for benefits and denied this claim. (Tr. 35).

This appeal followed. (Doc. 1). On appeal, Miller challenges the adequacy of the ALJ's decision arguing the decision is not supported by substantial evidence. (Doc. 10). As discussed in greater detail below, having considered the arguments of counsel and carefully reviewed the record, we conclude that the ALJ's decision should be remanded for further consideration in accordance with this decision.

## III.  Discussion

### A.  Substantial Evidence Review – the Role of this Court

This Court's review of the Commissioner's decision to deny benefits is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. §405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial

evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence means less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

A single piece of evidence is not substantial evidence if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence." *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)) (internal quotations omitted). However, where there has been an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). The court must "scrutinize the record as a whole" to determine if the decision is supported by substantial evidence. *Leslie v. Barnhart*, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has explained the limited scope of our review, noting that "[substantial evidence] means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Under this standard, we must look to the existing administrative record to determine if there is "'sufficient evidence' to support the agency's factual determinations." *Id.* Thus, the question before us is not whether the claimant is disabled, but rather whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was based upon a correct application of the law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts"); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope

of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

When conducting this review, we must remain mindful that "we must not substitute our own judgment for that of the fact finder." *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)). Thus, we cannot re-weigh the evidence. Instead, we must determine whether there is substantial evidence to support the ALJ's findings. In doing so, we must also determine whether the ALJ's decision meets the burden of articulation necessary to enable judicial review; that is, the ALJ must articulate the reasons for his decision. *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000). This does not require the ALJ to use "magic" words, but rather the ALJ must discuss the evidence and explain the reasoning behind his decision with more than just conclusory statements. *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (citations omitted). Ultimately, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).

**B.**    <u>Initial Burdens of Proof, Persuasion, and Articulation for the ALJ</u>

To receive disability benefits under the Social Security Act, a claimant must show that he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); *see also* 20 C.F.R. §§404.1505(a), 416.905(a). This requires a claimant to show a severe physical or mental impairment that precludes [him/her] from engaging in previous work or "any other substantial gainful work which exists in the national economy." 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she is under retirement age, contributed to the insurance program, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination, the ALJ follows a five-step evaluation. 20 C.F.R. §§404.1520(a), 416.920(a). The ALJ must

14

sequentially determine whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals a listed impairment; (4) is able to do his or her past relevant work; and (5) is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also determine the claimant's residual functional capacity (RFC). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett*, 220 F.3d at 121 (citations omitted); *see also* 20 C.F.R. § 404.1545(a)(1). In making this assessment, the ALJ must consider all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2). Our review of the ALJ's determination of the plaintiff's RFC is deferential, and that determination will not be set aside if it is supported by substantial evidence. *Burns v. Barnhart,* 312 F.3d 113, 129 (3d Cir. 2002).

15

The claimant bears the burden at Steps 1 through 4 to show a medically determinable impairment that prevents him or her from engaging in any past relevant work. *Mason*, 994 F.2d at 1064. If met, the burden then shifts to the Commissioner to show at Step 5 that there are jobs in significant numbers in the national economy that the claimant can perform consistent with the claimant's RFC, age, education, and work experience. 20 C.F.R. §§404.1512(f), 416.912(f); *Mason*, 994 F.2d at 1064.

With respect to the RFC determination, courts have followed different paths when considering the impact of medical opinion evidence on this determination. While some courts emphasize the necessity of medical opinion evidence to craft a claimant's RFC, *see Biller v. Acting Comm'r of Soc. Sec.,* 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013), other courts have taken the approach that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006). Additionally, in cases that involve no credible medical opinion evidence, courts have held that "the proposition that an ALJ

16

must always base his RFC on a medical opinion from a physician is misguided." *Cummings v. Colvin*, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

Given these differing approaches, we must evaluate the factual context underlying an ALJ's decision. Cases that emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where well-supported medical sources have found limitations to support a disability claim, but an ALJ has rejected the medical opinion based upon an assessment of other evidence. *Biller*, 962 F. Supp. 2d at 778–79. These cases simply restate the notion that medical opinions are entitled to careful consideration when making a disability determination. On the other hand, when no medical opinion supports a disability finding or when an ALJ relies upon other evidence to fashion an RFC, courts have routinely sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. *See Titterington*, 174 F. App'x 6; *Cummings,* 129 F. Supp. 3d at 214–15. Ultimately, it is our task to determine, in light of the entire record,

whether the RFC determination is supported by substantial evidence. *Burns,* 312 F.3d 113.

### C.   Legal Benchmarks for the ALJ's Assessment of Medical Opinions

The plaintiff filed this disability application in February of 2021, after Social Security Regulations regarding the consideration of medical opinion evidence were amended.  Prior to March of 2017, the regulations established a hierarchy of medical opinions, deeming treating sources to be the gold standard. However, in March of 2017, the regulations governing the treatment of medical opinions were amended. Under the amended regulations, ALJs are to consider several factors to determine the persuasiveness of a medical opinion: supportability, consistency, relationship with the claimant, specialization, and other factors tending to support or contradict a medical opinion. 20 C.F.R. § 404.1520c(c).

Supportability and consistency are the two most important factors, and an ALJ must explain how these factors were considered in his or her written decision. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *Blackman v. Kijakazi*, 615 F. Supp. 3d 308, 316 (E.D. Pa. 2022). Supportability means "[t]he more relevant the objective medical evidence and

supporting explanations . . . are to support his or her medical opinion(s) . . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). The consistency factor focuses on how consistent the opinion is "with the evidence from other medical sources and nonmedical sources." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

While there is an undeniable medical aspect to the evaluation of medical opinions, it is well settled that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). When confronted with several medical opinions, the ALJ can choose to credit certain opinions over others but "cannot reject evidence for no reason or for the wrong reason." *Mason*, 994 F.2d at 1066. Further, the ALJ can credit parts of an opinion without giving credit to the whole opinion and may formulate a claimant's RFC based on different parts of different medical opinions, so long as the rationale behind the decision is adequately articulated. *See Durden v. Colvin*, 191 F. Supp. 3d 429, 455 (M.D. Pa. 2016). On the other hand, in cases where no medical opinion credibly supports the claimant's

19

allegations, "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." *Cummings*, 129 F. Supp. 3d at 214–15.

### D.    <u>This Case Will Be Remanded.</u>

As we have noted, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests," *Cotter*, 642 F.2d at 704, and the ALJ must "indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec.*, 181 F. 3d 429, 433 (3d Cir. 1999). After consideration, we conclude that the ALJ's RFC determination is not supported by an adequate explanation.

Here, Miller contends that the ALJ erred in failing to include a limitation in the RFC to "one to two step tasks" despite finding the opinions of the mental health consultative examiner and state agency psychological consultant to be persuasive. Instead, the ALJ limited Miller to "simple, routine tasks, but not a production rate pace, . . . [and] simple work-related decisions." (Tr. 22). While we believe this to be a

close case, we conclude that the ALJ's failure to explain the omission of such a limitation from the RFC determination warrants a remand.

In our view, the ALJ's decision is not supported by substantial evidence. In making this finding, we are persuaded by at least one case in this circuit that considered this same issue. In *Cowher v. O'Malley*, 2024 WL 3161865 (W.D. Pa. June 24, 2024), the court considered a similar argument by the plaintiff. In that case, the ALJ found persuasive two opinions that limited the plaintiff to "very short and simple instructions," but failed to include such a limitation in the RFC, instead limiting the plaintiff only to "simple instructions." *Id.* at *7. The court first noted that "a difference exists between an individual capable of following 'simple instructions,' and an individual only capable of following 'very short and simple instructions (i.e., perform one and two step tasks)[.]'" *Id.* (citations to the record omitted). The court then considered how the Dictionary of Occupation Titles ("DOT") defines the different "reasoning development" levels associated with certain occupations: "Jobs at Reasoning Development Level 1 ('R1') require an employee to '[a]pply commonsense understanding to carry out *simple*

*one- or two-step instructions*[,]' while Jobs at Reasoning Development Level 2 ('R2') require the ability to '[a]pply commonsense understanding to carry out *detailed but uninvolved written or oral instructions*[.]'" *Id.* (citing Appendix C – Components of the Definition Trailer, 1991 WL 688702 (emphasis in original)).

The *Cowher* court went on to conclude that a limitation to "very short and simple instructions" was likely inconsistent with reasoning level 2 occupations. *Cowher*, 2024 WL 3161865 at* 7. The court further concluded that the ALJ failed to adequately explain the omission of such a limitation despite finding the opinions setting forth such a limitation persuasive, finding that the ALJ never addressed his decision to limit the plaintiff to only "simple" instructions, nor explained his rejection of the more restrictive limitation to "very short and simple instructions." *Id.* at *8. However, in that case, the court ultimately found that this error was harmless, as the ALJ identified at least one occupation at Step 5 with a reasoning level 1 that the plaintiff could perform. *Id.* at *9-10.

Here, we similarly find that the ALJ's omission of a one-to-two-step tasks limitation was not adequately explained in the decision. Despite

finding the opinions of the mental health providers, Drs. Betts, Franks, and Cloutier, persuasive, the ALJ failed to adequately explain how his RFC limiting Miller to "simple, routine tasks" accounted for the limitations to one-to-two-step tasks that the ALJ found persuasive. As we have noted, while the ALJ is not required to accept every limitation set forth in an opinion he finds persuasive, he must at a minimum explain the rationale behind the RFC determination. *Durden*, 191 F. Supp. 3d at 455. Further, the ALJ may not "reject evidence for no reason or the wrong reason." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). Here, the ALJ failed to provide an adequate explanation for discounting Dr. Franks' limitation to one-to-two-step tasks. While the ALJ may have relied on other evidence in the record to conclude that this limitation was not credibly established, there is nothing in the decision to indicate which evidence he relied on or why he rejected this limitation set forth by Dr. Franks' opinion, which he found persuasive. Accordingly, we conclude that the ALJ's omission of the "one-to-two-step tasks" limitation was not adequately explained in the decision, and therefore, is not supported by substantial evidence.

23

We further conclude that this error is not harmless. Social Security appeals are subject to harmless error analysis. *See Holloman v. Comm'r Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016). Under the harmless error analysis, a remand is warranted only if the error "prejudices a party's 'substantial rights'"; that is, if the error "likely affects the outcome of the proceeding, . . ." *Hyer v. Colvin*, 72 F. Supp. 3d 479, 494 (D. Del. 2014). In this case, the ALJ's decision at Step 5 identified three jobs that Miller could perform—order clerk, which requires a reasoning level 3 (DOT 209.567-014, 1991 WL 671794); information clerk, which requires a reasoning level 3 (DOT 237.367-046, 1991 WL 672194); and inspector (DOT 716.687-030, 1991 WL 679466 which requires a reasoning level 2. As discussed in *Cowher*, as well as in several other cases we find persuasive, a limitation to one-to-two-step tasks can (but does not always) preclude jobs requiring reasoning level 2, as such jobs require that an individual be able to carry out "detailed but uninvolved written or oral instructions." *See Cowher*, 2024 WL 3161865, at *9-10; *see also Leach v. Kijakazi*, 70 F.4th 1251, 1257 (9th Cir. 2023) ("A level-two job with 'detailed but uninvolved ... instructions' could require an employee

to follow lengthy simple instructions. On the present record, then, we cannot determine whether the level-two jobs identified by the vocational expert require only short, simple instructions."); *Thomas v. Berryhill*, 916 F.3d 307, 314 (4th Cir. 2019) ("We believe that Thomas, being limited to short, simple instructions, may not be able to carry out detailed but uninvolved instructions.").

Here, the jobs identified by the ALJ at Step 5 require a reasoning level 2 or 3, which could be inconsistent with a limitation to one-to-two-step tasks. Further, we have concluded that the ALJ did not adequately explain the omission of such a limitation. Accordingly, given that such a limitation could preclude the jobs identified by the ALJ at Step 5, we find that the failure to explain this omission is not harmless and requires a remand.

Accordingly, a remand is required for further consideration of these issues. While we reach this conclusion, we note that nothing in this Memorandum Opinion should be deemed as expressing a judgment on

the ultimate outcome of this matter. Rather, that task is left to the ALJ on remand.[4]

## IV.   Conclusion

For the foregoing reasons, the decision of the Commissioner will be remanded for further consideration.

An appropriate order follows.

_s/ Daryl F. Bloom_
Daryl F. Bloom
Chief United States Magistrate Judge

Dated: March 4, 2025

---

[4] Because we are remanding based on the ALJ's failure to include certain mental limitations in the RFC, we do not reach the other issues argued by the plaintiff.